KAREN P. HEWITT
United States Attorney
AARON B. CLARK
Assistant U.S. Attorney
California State Bar No. 239764
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6787
Email: aaron.clark@usdoj.gov

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0445JLS |
|---|---|---|
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | ) | |
| | ) | |
| JORGE RAMIREZ-CHAVEZ, | ) | Date:        June 3, 2008 |
| | ) | Time:        9:00 a.m. |
| | ) | Honorable:  Janis L. Sammartino |
| Defendant. | ) | |
| | ) | |
| | ) | |

COMES NOW the plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Aaron B. Clark, Assistant United States Attorneys, and respectfully submits the following Trial Memorandum.

**I**

**STATEMENT OF THE CASE**

**A.    INDICTMENT**

The Defendant, Jorge Ramirez-Chavez (hereinafter "Defendant"), was charged by a grand jury on February 20, 2008 with violating Title 8 U.S.C. 1326(a) and (b), Attempted Entry after Deportation, Title 18 U.S.C. 1544, Misuse of Passport, and Title 18 U.S.C. 2, Aiding and Abetting. Defendant was arraigned on the Indictment on March 6, 2008, and entered a plea of not guilty. On May 14, 2008, the grand jury returned a Superseding Indictment additionally charging Defendant

with violation Title 18, U.S.C. 1028A, Aggravated Identity Theft. Defendant is set to be arraigned on the Superseding Indictment on June 3, 2008.

### B. TRIAL STATUS

Trial is scheduled for Tuesday, June 3, 2008, at 9:00 a.m. before the Honorable Janis L. Sammartino. The United States anticipates that its case-in-chief will last approximately a day and a half.

### C. STATUS OF COUNSEL

Defendant is represented by Christian De Olivas.

### D. CUSTODY STATUS

Defendant is in custody.

### E. INTERPRETER

The United States does not need an interpreter for any of its witnesses. The United States anticipates that Defendant may need an interpreter.

### F. JURY WAIVER

Defendant has not waived trial by jury.

### G. PRETRIAL MOTIONS

On March 24, 2008, the Government filed a motion for fingerprint exemplars and reciprocal discovery. The Court granted both motions.

On May 5, 2008, the Government additionally filed motions *in limine* to: (1) Exclude witnesses; (2) Prohibit reference to punishment, etc.; (3) Preclude testimony of character witnesses; (4) Preclude evidence of duress or necessity; (5) Preclude expert testimony; (6) Exclude evidence about re-entry; (7) Exclude prior residency evidence; (8) Admit A-file documents; (9) Preclude arguments regarding warning; (10) Prohibit reference to document destruction; (11) Prohibit collateral attack of deportation; and (11) Renew the Government's motion for reciprocal discovery. The Court is set to rule on these motions on June 3, 2008.

As of the date of this memorandum, Defendant has filed no motions.

### H. STIPULATIONS

There are no stipulations between the parties.

I.   **DISCOVERY**

The United States has complied with its discovery obligations. Defendant has not provided any reciprocal discovery.

## II

## STATEMENT OF THE FACTS

A.   **IMMIGRATION HISTORY**

Defendant is a Mexican citizen who was ordered deported after a hearing before an immigration judge on November 22, 1999. Defendant's was also recently removed from the United States on April 7, 2007.

B.   **RAP SHEET SUMMARY CHART**

| CONVICT DATE | COURT OF CONVICTION | CHARGE | TERM |
|---|---|---|---|
| 8/1/05 | USDC - SDCA | 1325 - Illegal Entry | 30 months |
| 2/9/04 | Riverside County Municipal Court | VC 40508, Failure to Appear: Written Promise | 24 months probation |
| 1/4/95 | San Diego County Superior Court | PC 12025(A) Carry Concealed Weapon in Veh.  PC 12031 Carry Loaded Firearm  HS 11360(A) Sell/Furnish Marijuana  HS 11359 Possess Marijuana for Sale | 365 days jail |
| 10/30/98 | | Probation Violation | 2 years |

C.   **DEFENDANT'S APPREHENSION**

On December 10, 2007, at approximately 7:50 p.m., Maria Elena Rodriguez applied for admission into the United States from Mexico at the San Ysidro, California Port of Entry as the driver of a silver 1998 Honda Accord. Three people were present with Rodriguez in the vehicle, including Defendant, who was in the backseat. Maria Rodriguez then presented documents on behalf of herself and three passengers, including passport number 037829575 belonging to Joe Rodriguez. Defendant then identified himself to the inspection officers as Joe Rodriguez, the owner

of the passport. A database query on the documents revealed that one of the passengers was a name match in the Inter-Agency Border Inspection System (IBIS), so the vehicle was referred to secondary inspection.

In secondary, officers noticed that Defendant did not appear to be the person depicted in the passport he claimed ownership of. When asked, however, Defendant maintained the passport was his. Fingerprint queries later revealed Defendant's true identity. All four vehicle occupants were subsequently placed under arrest and taken into custody.

Maria Rodriguez was subsequently advised of her <u>Miranda</u> rights, which she agreed to waive. She then stated to agents that she and her mother traveled to Tijuana, Mexico to meet Defendant, her uncle. She stated she knew Defendant did not have documents to enter the United States legally and that she purposefully presented her father's passport on behalf of Defendant. She stated her father was not aware his passport was being used to bring in Defendant.

Alicia Yolanda Rodriguez, a passenger in the vehicle, was also advised of her <u>Miranda</u> rights, which she elected to waive. She stated she took her husband's United States Passport from her home without her husband's knowledge and provided the passport to Defendant, her brother, to facilitate his re-entry into the United States.

## III

## PERTINENT LAW

**A.    8 U.S.C. § 1326 - ATTEMPTED ENTRY**

The United States must prove beyond a reasonable doubt that:

1. Defendant was deported from the United States;
2. Defendant had the conscious desire to re-enter the United States without consent;
3. Defendant committed an overt act that was a substantial step towards reentering the United States without consent;
4. Defendant had not obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission into the United States; and

5. Defendant was an alien at the time of his attempted reentry into the United States.

Committee on Model Criminal Jury Instructions - Ninth Circuit, Manual of Model Jury Instructions for the Ninth Circuit, §9.5A (West ed. 2003, approved January 2007).

**B.     18 U.S.C. § 1544 - MISUSE OF PASSPORT**

The United States must prove beyond a reasonable doubt that:

1. Defendant willfully and knowingly used a passport issued and designed for the use of another.

**C.     8 U.S.C. §1028A - AGGRAVATED IDENTITY THEFT**

The United States must prove beyond a reasonable doubt that:

1. Defendant knowingly possessed or used a means of identification of another person without lawful authority; and

2. Defendant did so during and in relation to violating Title 18, United States Code, Section 1542, using a passport secured by fraud.

See United States v. Beachem, 399 F. Supp. 2d 1156, 1158 (W.D. Wash. 2005) (holding that the word "knowingly" in § 1028A modified the phrase "means of identification of another person" such that the statute required knowledge that the means of identification did in fact belong to another); United States v. Villanueva-Sotelo, 515 F.3d 1234, 1236 (D.C. Cir. Feb. 15, 2008) (same); United States v. Salazar-Montero, 520 F. Supp. 2d 1079, 1094 (N.D. Iowa 2007) (same); but see United States v. Montejo, 442 F.3d 213, 215 (4th Cir. 2006), cert. denied, 127 S. Ct. 366 (2007) (finding § 1028A(a)(1) unambiguous and holding that "as a matter of common usage, 'knowingly' does not modify the entire lengthy predicate that follows it."); United States v. Hurtado, 508 F.3d 603 (11th Cir. 2007) (per curiam) (same); United States v. Godin, 489 F. Supp. 2d 118 (D. Me. 2007) (same).

//
//
//
//

A person has possession of something if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it.

[More than one person can be in possession of something if each knows of its presence and has the power and intention to control it.]

See 9th Cir. Crim. Jury Instr. 3.18 (2007).[1]

Use of a means of identification of another is to present, display, certify or otherwise employ the identification in any manner so that it would be accepted as identification. Cf. United States v. Klopf, 423 F.3d 1228, 1240 (11th Cir. 2005) (interpreting 18 U.S.C. § 1029(a)).

The term "lawful authority" means the authority to use or possess identification documents by statute or regulation, or by contract with a government entity which has such authority. Cf. United States v. Bell, 980 F.2d 1095, 1098 (7th Cir. 1992) (interpreting 18 U.S.C. § 1028(a)).

### D. ALIENAGE

The Ninth Circuit could not be more clear when it held that "deportation documents are admissible to prove alienage under the public records exception to the hearsay rule." See United States v. Hernandez-Herrera, 273 F.3d 1213, 1218 (9th Cir. 2001) (affirming the admission of deportation documents to prove alienage). The Ninth Circuit has also made clear the type of deportation documents that may be used as evidence of alienage:

> Although neither a deportation order, see United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (citing United States v. Ortiz-Lopez, 24 F.3d 53, 55 (9th Cir. 1994)), nor the defendant's own admissions, see United States v. Hernandez, 105 F.3d 1330, 1332 (9th Cir. 1997), standing alone, will support the conclusion that a defendant is an alien, here the government offered Ramirez-Cortez's prior **deportation order**, **admissions Ramirez-Cortez made in his underlying deportation proceeding**, and the testimony of an INS agent that his review of Ramirez-Cortez's immigration records reflected that Ramirez-Cortez was an alien. Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that Ramirez-Cortez was an alien. Cf. United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (finding sufficient evidence of alienage where the government's evidence consisted of a prior **deportation order**, the defendant's admissions to an

---

[1] Possession may be proven by actual or constructive possession. To prove constructive possession, the United States must establish a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised dominion and control over the contraband. United States v. Barajas-Montiel, 185 F.3d 947, 955-56 (9th Cir. 1999). It is not the same as merely knowing the contraband is nearby. Id. The circumstances of each case must be examined to determine if there is such a nexus or relationship between the defendant and the goods that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession. Id.

       INS agent that he was a Mexican citizen, and his **admissions during the deportation hearing** that he was not a United States citizen); United States v. Contreras, 63 F.3d 852, 858 (9th Cir. 1995) (holding that sufficient evidence supported the conviction when the government introduced a prior **deportation order**, the **deportation hearing transcript**, which indicated that the defendant admitted his Mexican citizenship under oath, and testimony of an INS agent that the defendant was a Mexican citizen).

United States v. Ramirez-Cortez, 213 F.3d 1149, 1158 (9th Cir. 2000) (emphasis added).

       The Ninth Circuit has affirmed the admission of orders to show cause, see Sotelo, 109 F.3d at 1449, admissions made during deportation hearings, see id., and transcripts, see Contreras, 63 F.3d at 858. In Sotelo, the Ninth Circuit described a list of evidence that was admitted at trial which supported a defendant's § 1326 conviction:

> The prosecution also presented several documents from the prior deportation proceeding. During the **deportation hearing**, Sotelo admitted, through his lawyer, allegations in the order to show cause that he is not a citizen or national of the United States and he is a native and citizen of Mexico. The prosecution presented the **order to show cause** and an **advisement of rights form**, which Sotelo signed. The advisement of rights form stated that Sotelo admitted he was in the United States illegally. Finally, the prosecution presented the order of deportation and the warrant of deportation, evidencing Sotelo's actual deportation.

109 F.3d at 1449 (emphasis added).

### E.    PHYSICAL REMOVAL

       The Ninth Circuit has held that deportation "refers to the removal from the country of aliens who are physically present in the United States." United States v. Romo-Romo, 246 F.3d 1272, 1275-76 (9th Cir. 2001); see also United States v. Luna-Madellaga, 315 F.3d 1224, 1227 (9th Cir. 2003) ("Section 1326 speaks only of 'removal.'" . . . "It plainly turns on the alien's physical removal -- not the order of removal."). As a result, the United States need only prove beyond a reasonable doubt that Defendant physically left the country sometime between the time he was ordered deported and the time he was found in the United States. See United States v. Bahena-Cardenas, 411 F.3d 1067, 1074-75 (9th Cir. 2005) (citation omitted). A warrant of deportation may be sufficient evidence of physical removal. Id.

### F.    EXPRESS CONSENT

       The Ninth Circuit has stated what is required for permission to reapply:

> The INS has promulgated regulations that govern the process by which the Attorney General will "[c]onsent to [a deported alien] reapply[ing] for admission[.]" 8 C.F.R.

> § 212.2. These regulations include the requirement that a deported alien must have remained out-side of the United States for a minimum of five consecutive years. Id. § 212.2(a). Pina-Jaime did not meet this requirement. Nor did he submit the required form I-212 to the INS to obtain consent of the Attorney General to reapply for admission. See United States v. Sanchez-Milam, 305 F.3d 310, 312-13 (5th Cir. 2002), cert. denied, 537 U.S. 1139, 154 L. Ed. 2d 834, 123 S. Ct. 932 (2003). Accordingly, the Attorney General did not "expressly consent[] to [Pina-Jaime's] reapplying for admission" as required by the statute. See 8 U.S.C. § 1326(a)(2).

United States v. Pina-Jaime, 332 F.3d 609, 611-12 (9th Cir. 2003). There is no evidence supporting that Defendant has done so.

As a result, any cross-examination regarding the lack of permission is irrelevant. In United States v. Rodriguez-Rodriguez, 393 F.3d 849, 856 (9th Cir. 2005), the defendant sought to elicit testimony on cross-examination from a witness for the United States regarding the following claims: (1) INS computers are not fully interactive with other federal agencies' computers; (2) over 2 million documents filed by immigrants have been lost or forgotten; (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States; and (4) the custodian never checked with the other federal agencies to inquire about documents relating to the defendant. Judge Lorenz sustained objections to this line of cross-examination finding that it was irrelevant. Id. The Ninth Circuit agreed stating that "[n]one of that information is relevant on the facts of this case, because it is uncontested that [the defendant] never made any application to the INS or any other federal agency." Id.

As in Rodriguez, Defendant has not presented any evidence that he had applied for reentry. As in Rodriguez, any testimony from witnesses for the United States regarding the types of checks performed to show the lack of an application for reentry would be irrelevant.

There is a second reason this type of cross-examination is irrelevant. It is true that the Ninth Circuit's model jury instruction requires the United States to prove the defendant's lack of permission to re-enter the United States beyond a reasonable doubt. Ninth Circuit Manual of Model Jury Instructions – Criminal § 9.5; see United States v. Rivera-Relle, 333 F.3d 914, 919 (9th Cir. 2003); United States v. Mateo-Mendez, 215 F.3d 1039 (9th Cir. 2000). However, unlike a true "element," lack of permission to re-enter is more like an affirmative defense. The Fifth Circuit has stated,

> [I]t is unclear whether Attorney General consent is even an element of 8 U.S.C. § 1326 or only an affirmative defense. The "unless" language would seem to indicate that it is an exception and is therefore more in the nature of a defense which the defendant must establish.

United States v. Terrazas-Carrasco, 861 F.2d 93, 96 (5th Cir. 1988). The Supreme Court has never ruled on this question, but in United States v. Mendoza-Lopez, 481 U.S. 828, 830-31 (1987), the Court called the "consent" clause an "exception" to the statute. The Court described section 1326 as providing the following:

> "Any alien who–
> "(1) has been arrested and deported or excluded and deported, and thereafter
> "(2) enters, attempts to enter, or is at any time found in the United States . . .
> "shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not mor than two years, or by a fine of not more than $1,000, or both."

Id. at 830-31. In a footnote, the Supreme Court added that the "consent" clause was an "exception" to the statute:

> The statute excepts those aliens who have either received the express consent of the Attorney General to reapply for admission or who otherwise establish that they were not required to obtain such consent. 8 U.S.C. § 1326(2)(A), (B).

Mendoza-Lopez, 481 U.S. at 831, n.2. The Court was not presented with the issue of whether the "consent" clause is an element or an affirmative defense. However, the language suggests that it should more properly be treated as a defense, and not as an element at all. See United States v. Gravenmeir, 121 F.3d 526, 528 (9th Cir. 1997) (holding, in possession of a machine gun prosecution, that "the exceptions contained in part (2) of the subsection establish affirmative defenses to the defined offense."). We think that Congress intended it to be an affirmative defense. After all, a defendant is in a much better position than the United States to know whether he has sought or obtained permission to re-enter the United States. Thus, unless Defendant intends to assert an affirmative defense that he reapplied, this type of cross-examination about the search performed for permission to enter is not relevant.

G. **LAWFULNESS OF PRIOR DEPORTATION**

Since physical removal is all that is required, the lawfulness of a defendant's prior deportation is not an element of the offense under § 1326 and should not be presented to the jury.

1  See United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996) (en banc). The United
2  States need only prove that a deportation proceeding actually occurred and that the defendant was
3  consequently deported. United States v. Medina, 236 F.3d 1028, 1031 (9th Cir. 2001).

4  A deportation order or warrant is sufficient to establish the prior deportation. Id.; see also
5  United States v. Bejar-Matrecios, 618 F.2d 81 (9th Cir. 1980) (holding a warrant of deportation is
6  admissible as a Public Record, pursuant to F.R.E. 803(8)). A tape recording or transcript of the prior
7  deportation is not required to prove the prior deportation. Medina, 236 F.3d at 1030-31.

8  Furthermore, although a defendant charged pursuant to § 1326 can preclude the United States
9  from relying on a prior deportation in which the proceedings were so procedurally flawed that it
10 "effectively eliminated the right of the alien to obtain judicial review," the mere absence of a tape
11 recording or transcript of the deportation proceeding does not establish that the deportation was
12 "fundamentally unfair." See id. at 1031-32 (citations omitted). Finally, because a defendant must
13 also prove prejudice as a result of a flawed deportation proceeding, a vague assertion that he might
14 be able to locate some defect in the proceeding if a tape recording was available is "no more than
15 speculation to support his assertion of prejudice," and insufficient to meet his burden. Id. at 1032
16 (quoting United States v. Corrales-Beltran, 192 F.3d 1311, 1318-19 (9th Cir. 1999)).

### H. PRIOR CONVICTION

18 A prior felony conviction is not an element of § 1326(a) and should not be presented to the
19 jury. See United States v. Alviso, 152 F.3d 1195, 1199 (9th Cir. 1998) (citing Almendarez-Torres
20 v. United States, 523 U.S. 224, 244 (1998)). The Supreme Court has recently indicated that the
21 Ninth Circuit's reasoning in Almendarez-Torres may have been incorrectly decided. See Apprendi
22 v. New Jersey, 530 U.S. 466, 489-90 (2000); United States v. Nordby, 225 F.3d 1053, 1057 n.1 (9th
23 Cir. 2000). The holding in Almendarez-Torres remains controlling law, however, until expressly
24 overruled by the Supreme Court. See United States v. Pacheco-Zepeda, 234 F.3d 411, 414 (9th Cir.
25 2000), cert. denied, 532 U.S. 966 (2001).

26 //
27 //
28 //

**I.   DUPLICATES**

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) under circumstances, it would be unfair to admit the duplicate instead of the original. See Fed. R. Evid. 1003.

**J.   PAST RECOLLECTION RECORDED**

Federal Rule of Evidence 803(5) allows a memorandum or record of an event to be read into evidence where:

> (1) the witness once had knowledge about the matters in the document, (2) the witness now has insufficient recollection to testify fully and accurately, and (3) the record was made or adopted by the witness at a time when the matter was fresh in the witness' memory and reflected the witness' knowledge correctly.

United States v. Collicott, 92 F.3d 973, 984 (9th Cir. 1996).

**IV**

**WITNESSES**

The Government reserves the right to add, omit, substitute or change the order of witnesses. Presently, the Government intends to call the following witnesses during its case-in-chief:

1. Officer Rolenio A. Murillo, Customs and Border Protection
2. Officer Emmanuel F. Arambulo, Customs and Border Protection
3. Joe Rodriguez
4. Officer Claudia Rios, Customs and Border Protection
5. Aleki Noa, Immigration Enforcement Agent
6. Lisa Dimeo, Fingerprint Expert

**V**

**EXHIBIT LIST**

The Government will provide a final exhibit list on the morning of trial. Presently, the Government intends to offer into evidence the following:

1. Pictures of San Ysidro Port of Entry
2. Order of Immigration Judge (November 22, 1999)
3. Warrant of Removal/Deportation (Form I-205) (April 7, 2007)
4. Certificate of Non-Existence of Record

5. Fingerprint Cards (December 10, 2007; May 13, 2008)

## VI

## **PROPOSED VOIR DIRE**

1. Of those of you who have sat on criminal juries, did any of those juries fail to reach a unanimous verdict?
2. Has anyone had an unpleasant experience with any law enforcement personnel?
3. Has anyone had any disputes with any agency of the United States Government?
4. Does anyone have relatives or close friends who have been investigated, arrested, accused or charged with a crime?
5. Does anyone have relatives or close friends who have been deported or removed?
6. Does anyone have strong feelings about the United States Border Patrol or any other federal agency involved in immigration issues?
7. Does anyone believe that immigration laws are too harsh?
8. Does anyone believe everyone should be allowed to enter the United States?
9. Does anyone believe that it should be legal to enter the United States without authorization?
10. Does everyone understand that as a juror your duty is to apply the law regardless of whether you disagree with it?
11. Does everyone understand that the laws of the United States equally apply to everyone who enters the United States?
12. Does everyone understand that as a juror you are not to consider prejudice, pity or sympathy in deciding whether the Defendant is guilty or not guilty?
13. Does anyone think that, regardless of the strength of the evidence, he/she will have trouble deciding whether the Defendant is guilty or not guilty?
14. Does anyone think he/she cannot decide whether a person is guilty or not guilty?
15. Does anyone have religious or moral beliefs which will make it difficult for them to make a decision strictly based on the law and facts of this case?

//

## VII

## **JURY INSTRUCTIONS**

The United States will submit proposed jury instructions under separate cover. The United States reserves the right to submit additional instructions at the Fed. R. Crim. P. 30 conference.

## VIII

## **OTHER LEGAL ISSUES**

All outstanding legal issues will be addressed prior to commencement of trial scheduled for May 20, 2008.

DATED: May 30, 2008.

>Respectfully submitted,
>
>KAREN P. HEWITT
>United States Attorney
>
>/s/ *Aaron B. Clark*
>AARON B. CLARK
>Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 08CR0445-JLS |
| Plaintiff, | |
| v. | |
| JORGE RAMIREZ-CHAVEZ, | CERTIFICATE OF SERVICE |
| Defendant. | |

IT IS HEREBY CERTIFIED THAT:

I, AARON B. CLARK, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S TRIAL MEMORANDUM** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Christian De Olivas

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 30, 2008.

/s/ *Aaron B. Clark*
AARON B. CLARK
Assistant U.S. Attorney